IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GALEN PATTERSON and
RED LEAF LAND TRUST,

    Plaintiff,

v.

REGIONS BANK successor in interest
to UNION PLANTERS BANK,

    Defendant.                                  Case No. 06-cv-469-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

In this case, plaintiff Galen Patterson brings this suit as the sole beneficiary of plaintiff Red Leaf Land Trust ("Trust") against defendant Regions Bank ("Defendant" or the "Bank"), successor in interest to Union Planters Bank (Doc. 3 - Complaint), alleging claims for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), **815 ILL. COMP. STAT. 505/1 - 505/12.** Plaintiffs' suit was originally filed in the Circuit Court of St. Clair County, Illinois. Defendant removed the case to this Court (Doc. 2), asserting that two grounds existed to establish jurisdiction: (1) diversity and (2) federal question. Disagreeing with the existence of federal subject matter jurisdiction in this case, Plaintiffs filed a Motion to Remand (Doc. 13), to which Defendant timely opposed (Doc. 19). After reviewing the issues presented and fully briefed by the parties, the

Court finds that it presently lacks jurisdiction over this matter and must therefore remand Plaintiffs' case.

## II. BACKGROUND

Plaintiffs' claims arise from a loan agreement ("Loan") negotiated with Defendant, which provides for a repayment of the principal plus interest at a rate of 6.5% per annum.  The Promissory Note[1] ("Note") states that the annual interest on the Loan was actually "computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding" (Doc. 19, p. 2, Ex. 1, p. 1).  Plaintiffs' Complaint pleads two Counts, both of which allege violations of the Consumer Fraud Act.  Plaintiffs seek a finding by the Court that Defendant violated the Consumer Fraud Act and a subsequent injunction requiring Defendant to cease using a time period of less than 12 calendar months to compute annual interest on Plaintiffs' loan, plus attorneys' fees (Doc. 3, p. 6).

Count I alleges that Defendant violated the Consumer Fraud Act by engaging in the deceptive and unfair business practice of fraudulent misrepresentation.  Essentially, Plaintiffs believe Defendant "conceal[ed] and

---

[1] Although the existence of this Note was pled by Plaintiffs in their Complaint, a copy of it was not attached as an exhibit.  Instead, they cited to the relevant portions of the Note.  However, Defendant later attached the Note as an exhibit to its opposing Response, explaining , "[a]s the Complaint repeatedly refers to the loan agreement and the agreement is central to Plaintiff's claims, the Promissory Note is properly attached here" (Doc. 19, p. 1, n.1, citing **Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431-32 (7th Cir. 1993)**).

obfuscat[ed] the true interest rate and cost of [the] Loan by deceptive half-truth representations of the interest rate and adding a vague, confusing, and contradictory boilerplate sentence in [the] Note misrepresenting how the annual interest rate on the Note is computed" (Doc. 3, ¶ 9(d)).  Further, Plaintiffs allege Defendant failed to clearly inform regarding its particular method of annual interest computation, instead representing to Plaintiffs a rate of annual interest based upon a 12-month calendar year, knowing its method of computing interest would be a material fact relied upon by Plaintiffs in deciding whether to obtain the Loan (*Id*. at ¶¶ 9(f), (g) & 12).  Plaintiffs state that subsections (a) and (c) of Section 10a of the Consumer Fraud Act (**815 ILL. COMP. STAT. 505/10a(a) & (c)**) warrant their request for injunctive relief.

In Count II, Plaintiffs allege that Defendant violated the Consumer Fraud Act by engaging in unfair and deceptive business practices – namely, for Defendant's use of a computation of per annum interest in violation of the Illinois Interest Act, **815 ILL. COMP. STAT. 205/1 - 205/11**.  In other words, Plaintiffs allege that this violation stems from Defendant's act of charging an interest rate which actually exceeds the rate allegedly agreed upon by the parties of 6.5% per annum.  Therefore, this "willful and material violation of Section 5 of the Illinois Interest Act[2] that

---

[2] Section 5 of the Illinois Interest Act (**815 ILL. COMP. STAT. 205/5**) reads:
> No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.

prohibits a creditor from 'directly or indirectly accepting or receiving in money . . . any sum . . . greater than' the rate of interest of 6.500% per annum agreed upon by the Bank and the Plaintiff" (Doc. 3, ¶ 11).  As such, Plaintiffs claim Defendant's alleged violation of the Interest Act also constitutes a violation of Section 2F of the Consumer Fraud Act (**815 ILL. COMP. STAT. 505/2F**).

As previously stated, Defendant removed this case based upon two jurisdictional grounds: diversity and federal question jurisdiction (Doc. 2).  Plaintiffs' Motion to Remand challenges the existence of either of these jurisdictional bases in this matter.  The Court's analysis will address both.

### III.  ANALYSIS

**A.  Removal**

The removal statute, **28 U.S.C. § 1441**, is construed narrowly, and doubts concerning removal are resolved in favor of remand.  ***Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993)**.  A defendant bears the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt.  ***See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir. 1997)**.  "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'"  ***Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997)(citations omitted)**.  However, if the district court

lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

**B.     Subject Matter Jurisdiction**

    **1.     Diversity Jurisdiction**

The statute regarding diversity jurisdiction, **28 U.S.C. § 1332**, requires complete diversity between the parties plus an amount in controversy which exceeds $75,000.00, exclusive of interest and costs. In this case, the parties do not contest the fact that diversity of citizenship exists. Instead, they differ on the issue of whether the amount in controversy is met. First, Defendant argues Plaintiffs are really seeking a declaration from the Court that Defendant's method of computing interest, as stated in the Note, is unlawful. Coupled with this declaration would be an injunction to prohibit Defendant from engaging in this practice. Therefore, Defendant proffers that such a declaration/injunction would be valued at not only Plaintiffs' own damages (plus attorneys fees), but also the pecuniary loss to Defendant if it was unable to compute its loans based on a 360-day year (Doc. 2, ¶ 11), as opposed to the 365-day year calculation that Plaintiffs favor. Defendant asserts that considering it has amassed 5,049 existing loans in Illinois with per annum interest calculation terms similar to Plaintiffs', this amount would far exceed the minimum amount in controversy (*see* Doc. 5 - Declaration of Karen H. Henderson and Doc. 19-3 - Supplemental Henderson Decl.).

Plaintiffs argue that contrary to what Defendant suggests, they are *not*

seeking declaratory relief. Rather, Plaintiffs assert that they merely request the Court make a *finding of fact* that Defendant violated the Consumer Fraud Act with respect to the Note (Doc. 13). Plaintiffs explain that this finding of fact would be necessary to support an injunction, as there is no right to a jury trial under the Consumer Fraud Act. Correcting Defendant's averments, Plaintiffs clarify that the only requested relief sought in their Complaint is an injunction and attorneys fees. Additionally, Plaintiffs argue that it would be improper to permit Defendant to aggregate the damages it may incur if Plaintiffs' request for injunctive relief is granted. Plaintiffs believe the amount in controversy should be comprised of the costs incurred by Defendant to comply with an injunction regarding *only* Plaintiffs' Loan. Lastly, Plaintiffs state that only attorney fees incurred *prior to* filing the Complaint in state court are relevant in determining the amount in controversy.

Plaintiffs believe that because only injunctive relief and attorneys fees are sought in this case, the Court must apply the Seventh Circuit's "either viewpoint" rule, which assesses the jurisdictional amount by "looking at either the benefit to the plaintiff or the cost to the defendant" in complying with the injunction. ***Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002)**. Moreover, Plaintiffs urge the Court to accept the law as stated in ***Smith v. Pfizer, Inc.*, 2005 WL 3618319 (S.D. Ill. March 24, 2005)(Reagan, J.)(citing *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997))**, holding that Defendant cannot aggregate its costs of

compliance, but must simply estimate the cost of complying with an injunction regarding Plaintiffs' Loan only.

Defendant believes it should be able to aggregate its costs of compliance as the amount in controversy is "measured by the value of the object of the litigation." ***Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977)(internal citations omitted)**. Defendant also cites other Seventh Circuit law in this regard, among them **McCarty v. Amoco Pipeline Co., 595 F.2d 389, 292 (7th Cir. 1979)("[T]he test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.")**. Defendant explains that even if the Court merely makes a finding of fact that Defendant violated the Consumer Fraud Act in computing interest on the Note based upon a 360-day year instead of a 365-day year, this would directly affect all of its similar loans in Illinois which use the same method to calculate per annum interest.

In this particular case, the Court only has jurisdiction over Plaintiffs' Loan. Therefore, as it is uncertain whether the remaining of Defendant's "similar Illinois loans" would actually be contested, it would be inappropriate, at this juncture, to aggregate the value of pecuniary damages Defendant may incur regarding these loans. Comporting with Seventh Circuit precedent, to compute the amount in controversy at the time of removal, this Court will consider only damages sought (or incurred by Defendant) in relation to Plaintiffs' Loan. Applying the Seventh Circuit's "either viewpoint" rule, the Court finds no clear indication made by either party

through allegations or other evidence, that the minimum amount in controversy has been met. Accordingly, the Court finds that Defendant has not met its burden to show diversity jurisdiction exists.

### 2. Federal Question Jurisdiction

Defendant asserts that even if the Court does not find that diversity jurisdiction exists, removal is still proper because there is federal question jurisdiction over Plaintiffs' claims. First, Defendant argues that Plaintiffs' state law claims are really claims of usury,[3] which are thereby completely preempted by the National Banking Act ("NBA," **12 U.S.C. §§ 85 & 86**) and also the Depository Institutions Deregulation and Monetary Control Act ("DIDA," **12 U.S.C. § 1831d**).[4] This complete preemption by federal statutory law, Defendant states, creates federal question jurisdiction pursuant to **28 U.S.C. § 1331**. Lastly, Defendant asserts that Plaintiffs' state law claims are also preempted by the regulations of the Office of the Comptroller of the Currency ("OCC") (*see* Doc. 2, pp. 6-7).

Under the well-pleaded complaint rule, federal question jurisdiction exists only when a federal question is presented by a plaintiff's complaint. ***Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)**. If no federal cause of action is affirmatively stated on the face of the complaint, removal on the basis of

---

[3] Usury is defined as when a lender charges a rate of interest that is higher than legally allowed by law. *See, e.g.*, **BLACK'S LAW DICTIONARY 1580 (8th ed. 2004)**.

[4] Defendant Regions Bank is a state-chartered bank and the successor in interest to Union Planters Bank, which is a national bank. However, the Note was executed between Plaintiffs and Union Planters Bank, prior to merging into Regions Bank. That appears to be why Defendant offers both the NBA and DIDA as legal bases for the complete preemption of Plaintiffs' claims.

federal question jurisdiction is improper.  *Id*.  The presence of a federal defense, including preemption, does not provide a basis for removal.  *Id.* **at 393**.  Complete preemption, however, is an exception to the well-pleaded complaint rule and functions as a basis for the removal to federal court of otherwise well-pleaded state-law claims.  Complete preemption occurs where Congress intends a federal statute to completely preempt state-law causes of action, such that state-law claims effectively arise under federal law and therefore may be removed to federal court.  ***Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-8 (2003);** ***Caterpillar*, 482 U.S. at 393;** ***Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005)**.  That is, "[w]here a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under **28 U.S.C. § 1441(b)**."  ***Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069, 1071 (7th Cir. 2004)**.

Defendant believes its argument to be supported by the holding in ***Beneficial***, in which the United States Supreme Court held that state law usury claims were preempted by the NBA.  ***Beneficial*, 539 U.S. at 11 ("Because §§ 85 and 86 [of the NBA] provide the exclusive cause of action for [usury] claims, there is, in short, no such thing as a state-law claim of usury against a national bank.")**.  Further, this Court has previously found that the holding in ***Beneficial*** is also applicable to preempt state-law usury claims against state-chartered banks, through § 521(a) and (b) of DIDA.  ***See Forness v. Cross Country Bank, Inc.*, No.**

**05-cv-417-DRH, 2006 WL 240535 at \*3 (S.D. Ill. Jan. 13, 2006)(Herndon, J.)(citing *Greenwood Trust Co. v. Commonwealth of Massachusetts*, 971 F.2d 818, 826-27 (1st Cir. 1992); *In re Community Bank*, 418 F.3d 277, 295 (3d Cir. 2005); *Hill v. Chemical Bank,*, 799 F. Supp. 948 (D. Minn. 1992))**. Defendant it asserts this case is akin to an unpublished opinion recently issued by this Court in ***Forness v. Cross Country Bank, Inc.*, No. 05-cv-417-DRH, 2006 WL 240535 (S.D. Ill. Jan. 13, 2006)(Herndon, J.)**.

In support of remanding this case, Plaintiffs argue their claims do not, in fact, sound in usury. In other words, Plaintiffs distinguish this case, asserting that their claims do not allege Defendant charged interest in excess of that allowed by law, but, rather, Plaintiffs complain that Defendant charged a per annum interest rate that was not actually the rate negotiated by the parties. Therefore, Plaintiffs assert that the Complaint only pleads state law claims of deceptive and unfair business practices.

Defendant believes this case is directly on point with the Court's holding in ***Forness***. In ***Forness***, the plaintiffs pled counts against the defendants for unjust enrichment and restitution, breach of the covenant of good faith and fair dealing and for violations of the Consumer Fraud Act, alleging that the defendants charged fees in excess of the costs for their credit card services provided to the plaintiffs. ***Forness*, 2006 WL 204535 at \*1**. The defendants removed the case based upon the doctrine of complete preemption, as they believed the allegations plead usury

claims and, under **Beneficial**, were preempted. **Id.** Arguing for remand, the plaintiffs stated that their suit was instead "'mainly'" concerned with the defendants' deceptive practices in charging those fees and not the actual amount of the fees charged. **Id. at *3**. The Court, on examining the pleadings and the parties' briefings, found that because the allegations indicated that the plaintiffs did "not merely contest the general manner in which [the d]efendants assessed fees, but also the amount of those fees, and more specifically, the lack of a connection between those amounts and the underlying costs actually incurred by [the d]efendants," their claims sounded in usury and were therefore preempted. **Id.**

Plaintiffs attempt to distinguish this case from **Forness**, explaining that the actual amount of interest charged by Defendant is challenged by Plaintiff only to the extent that such rate thereby breached the contract rate of interest in the Note/Loan Agreement. Instead, Plaintiffs advocate that the legal issues in this matter are of contract law, not usury. As the NBA and DIDA do not provide remedies for breaches of contract, Plaintiffs argue that their claims are not preempted by these Acts. Further, Plaintiffs proffer that the NBA and DIDA do not preempt Consumer Fraud Act claims, as it is a statute intended to protect consumers and does not affect the ability of a bank to exercise its powers.

As the Court sees it, this case is distinguishable from **Forness**. In this matter, the crux of Plaintiffs' injury centers around a per annum interest rate on the Note which is at a rate other than what Defendant allegedly represented it would

Page 11 of 15

apply. Plaintiffs do not appear to be alleging that the challenged interest rate is illegal – but merely appear to allege that Defendant is not charging the rate it said it would charge on the Note.[5] There is no indication that the challenged interest rate

---

[5] Several cases, some not reported, were cited by Plaintiffs in support of the argument that their claims did not sound in usury. Defendant, in its Response, makes a nugatory attempt to distinguish these cases to show that their holdings do not bear any similarity with the instant case. While not binding precedent, several of these cases warrant brief mention. *See, e.g.*, **Great Western Resources, LLC v. Bank of Arkansas, N.A.**, No. 05-5152, 2006 WL 626375 (W.D. Ark. March 13. 2006)(Hendren, J.)(The plaintiffs challenged fees charged by the defendant, and although the plaintiffs conceded their usury claim was preempted, the district court found the remaining state law claims for breach of contract, violations of the Arkansas Deceptive Trade Practices Act, conversion and breach of implied covenant of good faith were not preempted.); **Saxton v. Capital One Bank**, 392 F. Supp. 2d 772 (S.D. Miss. 2005)(The district court determined that the plaintiff's claims brought under the Mississippi Consumer Protection Act were not usurious but rather, challenged the defendant's business practices – namely, the plaintiff alleged the defendant placed unauthorized and undisclosed charges on customer accounts, assessed late fees and interest on these improper charges without informing customers and breached express agreements in other various ways. However, the court did not find the plaintiff actually challenged the legality of the interest rate, but rather, that the rates were undisclosed, unwarranted and based on improper charges. Even though the plaintiff referred to the interest as "excessive," the amount itself was not challenged – what was challenged was the fact that the interest and fees were charged at all. Therefore, the court determined this reference was not enough by itself to turn the claim into a usury cause of action.); **Cortazar v. Wells Fargo & Co.**, No. C-04-894-JSW, 2004 WL 1774219 (N.D. Cal. Aug 9, 2004)(White, J.)(Several state law claims challenging the defendant's business practices with regards to loans were brought by the plaintiff, whereby the district court noted the allegations did not challenge the legality of interest rates, points or fees charged by the defendant, but instead challenged the unfair and deceptive manner in which the defendant induced borrowers to enter into such unfavorable loans. Thus, the court did not view these claims as usurious, even though the allegations stated that the loans at closing contained "above-market" and "exorbitant" interest rates than the loans previously disclosed to buyers, as the plaintiff never used the term "illegal" to describe the interest rate, the description merely demonstrated that the actual interest rate charged to the plaintiff at closing was less favorable than what was promised by the defendant.); **Cross-Country Bank v. Klussman**, No. C-01-4190-SC, 2004 WL 966289 (N.D. Cal. Apr. 30. 2004)(Conti, J.)(The plaintiff stated claims for violation of the California Consumer Legal Remedies Act and a violation of the Delaware Code for Unfair Business Practices, among other causes of action. The district court did not find these claims were usury claims, as the plaintiff did not challenge the legality of the interest rate, but merely complained that various interest fees were not disclosed, were unwarranted, based on improper charges and thus, should not have been charged at all. The district court viewed the claims as challenging not the *per se* amount of late fees or other interest, but instead, the defendant's improper and deceptive manner in charging such fees.); **Carson v. H&R Block, Inc.**, 250 F. Supp. 2d 669 (S.D. Miss. 2003)(The plaintiffs alleged they were solicited by the defendants to participate in a program for tax refund anticipation loans and that the defendants collected and charged fees while misrepresenting the true costs of the loan, thereby withholding,

(cont'd. on next page)

exceeds what is allowed by law or that the interest rate itself amounts to an excessive charge. Therefore, Plaintiffs have not ostensibly alleged usury claims. Rather, they alleged that Defendant breached the terms of the Note/Loan and its actions in doing so amounted to Consumer Fraud Act violations. Allegations such as these – although it is understandable how they could be artfully labeled as usurious – amount to nothing more than state law causes of action, which do not fall within the complete preemption ambit of either the NBA or DIDA. Although several cases cited by Defendant in support of its argument seem to find otherwise, the Court distinguishes this case in that Plaintiffs are not alleging Defendant did not have a legal right to charge the per annum interest rate, but for the fact that Plaintiffs believe Defendant represented a different interest rate would be applicable to the Note.

        Defendant, in the Notice of Removal, also raises the separate argument that Plaintiffs' Consumer Fraud Act claims are preempted by Regulations promulgated by the OCC. Yet, Defendant does not cite legal authority affirmatively stating that state law consumer fraud act claims are completely preempted by OCC

---

(Footnote 5 cont'd. from previous page)

concealing and suppressing from the plaintiffs the fact that their fees and interest rate would be substantially higher than the rate that was disclosed. The district court did not find that the plaintiffs were attacking the interest rates in anything but a peripheral manner, as they did not complain of the *legality* of the interest rate, but rather, that the plaintiffs were told one rate and the actual rate charged was different – regardless of the legality. Therefore, the court determined it was a claim of fraudulent misrepresentation and not usury.); ***West Virginia v. Parrish Automobile Training Co.*, 147 F. Supp. 2d 470 (N.D. W.Va. 2001)**(The district court found that the plaintiff's claims under the West Virginia Consumer Credit and Protection Act did not challenge the legality of the interest, but instead challenged the defendant's failure to disclose to consumers the fact that interest points were being added to the rate originally quoted by the bank, with the car dealership receiving the difference. The court saw it as a failure to disclose case, not usury.).

Regulations. Instead, Defendant relies on two specific OCC Regulations, **12 C.F.R. §§ 7.4008** and **34.4**. As Defendant points out, both Regulations allow national banks to make loans "without regard to state law limitations," with respect to rates of interests, terms of credit, and so forth, as the Court has previously determined Plaintiffs do not challenge the particular items as listed in **§§ 7.4008(d)(2)** and **34.4(a)**, the OCC Regulations do not preempt Plaintiffs' Consumer Fraud Act claims.[6]

Yet, expressly excluded from preemption are state laws only incidentally affecting the bank's lending power: contracts, torts and criminal law. *See* **12 C.F.R. §§ 7.4008(e)** and **34.4(b)**. Moreover, **12 C.F.R. §§ 7.4008(c)** states that a bank "shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, **15 U.S.C. [§] 45(a)(1)** . . . ." This Regulation does nothing to express that this provision therefore "displaces the state-law cause of action through complete preemption." ***Beneficial*, 539 U.S. at 7**. Nor does it appear to be in conflict with any state law. Rather, its seeming congruence with state laws regulating unfair and deceptive practices leads the Court to reject Defendant's argument. Therefore, the Court is convinced that the OCC Regulations do not completely preempt Plaintiffs' claims.

---

[6] Defendant also cites **§§ 7.4008(d)(2)(viii)**, which preempts any state law concerning "disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms . . . or other credit-related documents." Again, the Court believes this to be somewhat off the mark with the essence of Plaintiffs' injury as there were no allegations regarding advertising in relation to the Note.

## IV. **CONCLUSION**

Defendant has failed to meet its burden to show that either the amount in controversy was met or that Plaintiffs' claims are completely preempted. Finding neither diversity nor federal question jurisdiction exists to warrant removal of this case, the Court must thereby **GRANT** Plaintiffs' Motion to Remand (Doc. 13). Accordingly, this case is **REMANDED** back to the Circuit Court of St. Clair County, Illinois, each party to bear their own costs.

**IT IS SO ORDERED.**

Signed this 27th day of November, 2006.

/s/        David  RHerndon
**United States District Judge**